488 A.2d 1132

**COMMONWEALTH of Pennsylvania**

v.

**John W. JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 28, 1983.

Filed Feb. 21, 1985.

Margaret T. McKeown Murphy, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

This appeal follows the August 4th, 1982, Order of the Court of Common Pleas of Philadelphia County granting appellant an appeal *nunc pro tunc* from the Order denying his first PCHA Petition.

Appellant argues in this appeal that he received ineffective assistance of counsel when his trial counsel failed to inform him of his right to appeal his 1964 sentence for robbery and conspiracy and that he is entitled to a new trial on grounds of various constitutional violations which occurred during the course of the trial on those charges. Based on our findings that the Commonwealth failed to meet its burden of proving a knowing and voluntary waiver of direct appeal rights and that a tacit admission was improperly used against appellant at his trial, we reverse and remand for a new trial.

We shall set forth the tortuous and extensive history of this case for two reasons: first, so that our disposition of this appeal will be more easily understood and second, to demonstrate why the citizens of this Commonwealth, with understandable disbelief and consternation, are often times heard to complain of a criminal justice system so overburdened with technicalities that finality of judgment is at best an illusive goal.

Twenty-three (23) years ago on the afternoon of May 25, 1961, Mr. Lucius Hart, an elderly gentleman, sixty-eight (68) years of age was robbed of approximately fifteen thousand ($15,000.00) dollars in cash and checks. He was employed as a messenger for the C.A. Rowell Department

Store which was located at the corner of Germantown and Chelten Avenues in the city of Philadelphia and at the time of the robbery he was en route to the Girard Bank to make a deposit. As Mr. Hart was crossing Woodlawn Street, appellant and his co-defendant, John McManus, approached him from the side and after one of them said, "I'll take this," he was forcibly relieved of the canvass bag which contained the cash and checks. John McManus subsequently pleaded guilty to the crime. The appellant was arrested on May 25, 1961 and charged with aggravated robbery and criminal conspiracy.

On May 29, 1962, following a trial by jury before the Honorable Harold D. Saylor (now deceased), appellant was convicted of all charges. Post-verdict motions were filed and on May 2, 1963, Judge Saylor granted appellant's motion for a new trial.

Appellant retained new counsel, David N. Savitt, Esquire, now a Judge of the Court of Common Pleas of Philadelphia County, and was retried on December 4, 1963, before the Honorable Victor Blanc (now deceased) sitting without a jury. He was again convicted. Appellant filed a timely motion for a new trial and arrest of judgment. On January 16, 1964, Judge Blanc sentenced appellant to three (3) years probation on the charge of aggravated robbery and suspended sentence on the charge of conspiracy. No appeal was taken from this judgment of sentence.

On January 16, 1967, a probation violation hearing was held before the Honorable Thomas M. Reed (now deceased), in response to a warrant requested on September 1st, 1966, for technical violations, and Judge Reed revoked appellant's probation and imposed three (3) more years probation to begin January 16, 1967. Appellant was represented by counsel and no appeal was taken from Judge Reed's order.

On August 8, 1967, appellant was arrested and charged with the crime of burglary and on January 20, 1969 was convicted of this offense in a non-jury trial before the Honorable Charles J. Margiotti, who imposed a sentence of

six (6) to twenty-three (23) months in the Philadelphia County Prison.

On April 25th, 1969, a second probation revocation hearing was held before Judge Reed, who again revoked appellant's probation. On May 29, 1969, Judge Reed imposed a sentence of eight (8) to twenty (20) years. Appellant was represented by counsel and no appeal was taken from Judge Reed's sentence of imprisonment. Robert Simone, Esquire, represented appellant.

On November 19, 1969, appellant filed his first petition for relief under the Post Conviction Hearing Act, 42 Pa.C.S. § 9541 *et seq.* Appellant was represented by Robert Simone, Esquire, who alleged the following as reasons for post-conviction relief:

1. The introduction of evidence obtained pursuant to an unlawful arrest;

2. The introduction into evidence of a statement obtained in the absence of a lawyer at a trial when representation is constitutionally required;

3. The infringement of the privilege against self-incrimination under either federal or state law;

4. The unconstitutional suppression of evidence by the state;

5. Being twice placed in jeopardy;

6. The abridgement of rights guaranteed by the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right;

7. The denial of his right to appeal through failure of counsel to inform him of this right.

Evidentiary hearings were held on February 26, 1970 and March 25, 1970 before the Honorable Ethan Allen Doty, now a senior Judge of the Court of Common Pleas, at which time the court heard testimony from trial counsel, David N. Savitt, Esquire (now Judge Savitt), and appellant. On June 10, 1970, Judge Doty denied appellant's request for PCHA

relief without a supporting opinion. No direct appeal was filed and a petition for permission to appeal *nunc pro tunc* was denied by the Superior Court. That Order was affirmed by the Pennsylvania Supreme Court.

Attorney Simone filed a second PCHA petition on April 16, 1971 which alleged that the sentence imposed on May 29, 1969 violated the double jeopardy clause and was, therefore, illegal. The petition was denied without a hearing. The Superior Court affirmed. *Commonwealth v. Johnson,* 222 Pa.Super. 233, 294 A.2d 778 (1972) (imposition of incarceration following revocation of probation does not violate double jeopardy). Pending this decision, appellant, through Attorney Simone, filed a petition for a writ of habeas corpus in the federal court which was denied on January 11, 1974 for failure to exhaust state remedies. Finally, on July 28, 1977, appellant filed, *pro se,* a third PCHA petition alleging, *inter alia,* that first PCHA counsel had rendered ineffective assistance of counsel for failing to preserve appellate rights from the denial of the petition. The Honorable Edward J. Blake denied the petition without a hearing. The Superior Court reversed and remanded. *Commonwealth v. Johnson,* 298 Pa.Super. 493, 444 A.2d 1291 (1982). Appellant was represented on the appeal by present counsel. On August 5, 1982, the PCHA court granted appellant permission to file an appeal *nunc pro tunc* from Judge Doty's June 10, 1970 Order denying his first PCHA petition. In accordance with this Order, appellant filed the instant appeal.

Appellant advances the following arguments in support of his claim that the lower court erroneously denied his first PCHA petition: (1) trial counsel rendered ineffective assistance of counsel through his failure to inform appellant of his right to appeal the 1964 judgment of sentence; (2) he was denied due process by the introduction of tainted identification testimony at trial; (3) the introduction of a tacit admission against him violated his privilege against self-incrimination; (4) introduction of a statement elicited by police at a time when appellant was not represented by

counsel violated his privilege against self-incrimination; (5) he was convicted and sentenced before a mentally incompetent judge; (6) his waiver of a jury trial was invalid and, (7) he was punished three times for the same offense in violation of the principles of double jeopardy.

■ Initially, the Commonwealth contends that appellant has waived any claims for post-conviction relief by reason of his six-year delay in filing this, his first PCHA petition. This court has stated that a "lapse of time in filing a PCHA petition is a factor in assessing its merits." *Commonwealth v. Courts*, 315 Pa.Super. 108, 124, 461 A.2d 820, 827 (1983); *Commonwealth v. Strickland*, 306 Pa.Super. 516, 526, 452 A.2d 844, 849 (1982). However, the petition filed by appellant contains an allegation that trial counsel failed to inform appellant of his right to file a direct appeal from the judgment of sentence. In *Commonwealth v. Hairston*, 323 Pa.Super. 449, 470 A.2d 1004 (1984), the trial court denied appellant a hearing on a PCHA petition based, *inter alia*, on a four and one-half year delay in filing the petition. This court found that a dismissal based on delay was error when the PCHA petition alleged the deprivation of appellate rights:

> [W]e note that appellant implicitly has explained the delay in filing his petition and his reasons for not filing a direct appeal; that he was not informed of the time period in which to do so. Therefore, appellant's PCHA petition cannot be dismissed as untimely, as he has alleged the deprivation of his appellate rights.... There is also no waiver under the provisions of the PCHA where the petitioner proves the existence of 'extraordinary circumstances' justifying his failure to raise the issue on direct appeal. 19 P.S. 1180–4(b)(2). A denial of appellate rights is such an extraordinary circumstance.

*Id.*, 323 Pa.Superior Ct. at 452, 470 A.2d at 1006. *See also, Commonwealth v. Jackson*, 329 Pa.Super. 293, 478 A.2d 474 (1984). Thus, in view of appellant's allegation that he was deprived of his appellate rights, we must reject the

Commonwealth's theory that collateral relief has been waived by virtue of delay.

Review of the merits of appellant's claims, however, has been made more difficult by the passage of more than fourteen years since the original order denying the PCHA petition was signed by Judge Doty. In his opinion written following the filing of this appeal, Judge Doty stated that he "has long since destroyed his notes in this case" and that he "has absolutely no recollection of this case," thereby rendering him "unable to prepare an opinion which would properly evaluate testimony at the first PCHA hearing." Lower Court Opinion at 2. To complicate this state of affairs, in his original order denying post-conviction relief, Judge Doty did not file any type of statement of record setting forth his findings of fact and conclusions of law on which he based his decision. As a result, we are unable to determine the grounds on which the petition was denied. Nevertheless, in view of the extensive evidentiary hearing which was held on the petition, we will conduct an independent review of the record to determine whether appellant was afforded effective assistance of counsel. *Commonwealth v. McKnight*, 311 Pa.Super. 460, 457 A.2d 1272 (1983).

■ Appellant alleges that trial counsel was ineffective for failing to inform him of his right to appeal his 1964 sentence for robbery and conspiracy. "[A]n accused has an absolute right to appeal, Pa. Constitution, Article V, § 9, and counsel can be faulted for allowing that right to be waived unless the accused himself effectively waives the right, i.e., for not protecting the accused's right in the absence of an effective waiver." *Commonwealth v. Wilkerson*, 490 Pa. 296, 299, 416 A.2d 477, 479 (1980). In the case presently before us, the record of appellant's 1963–64 trial before Judge Blanc does not include a transcript of the sentencing proceeding. The record is, thus, silent on the question of whether appellant was informed of his right to file a direct appeal. Under these circumstances, the burden of the PCHA hearing fell on the Commonwealth to prove by

a preponderance of the evidence that appellant knowingly and voluntarily waived his right to appeal. *Commonwealth v. Wilson*, 430 Pa. 1, 241 A.2d 760 (1968). *See also, Commonwealth v. Ritchie*, 298 Pa.Super. 165, 444 A.2d 712 (1982).

At the evidentiary hearing on March 25, 1970, the Commonwealth offered the testimony of trial counsel, David N. Savitt, Esquire. Mr. Savitt testified that he filed post-trial motions on behalf of appellant and represented appellant at the time of sentencing. In response to questions regarding discussions about a possible appeal, trial counsel testified that according to his recollection, appellant did not express any desire to appeal the conviction (N.T. March 25, 1970 at 7) and that he felt certain that he had held discussions with appellant regarding the question of appeal (N.T. March 25, 1970 at 8). However, on cross-examination, trial counsel's testimony indicated that the failure to appeal was more the result of counsel's satisfaction with the probationary sentence than of appellant's informed decision to forego an appeal:

Q. Mr. Savitt, you said you were satisfied because the defendant got three years probation?

A. That's right.

Q. You indicated that the defendant indicated that he was satisfied?

A. To the best of my recollection, I think, and his family and everyone there was quite pleased, at that time, with the result.

Q. As a matter of fact, you were so satisfied that you didn't even take the time to tell the defendant, Mr. Johnson, 'You have a right to appeal, not only the verdict, but the sentence of three years probation to the Superior Court.?'

A. I don't recollect having discussed with him, at that time, any question of his right to appeal.

I was satisfied with the sentence, and I don't believe that we considered any possibility of appeal.

Q. As far as you can recall, you can't, it's a fact you can't recall after he was found guilty and sentence was pronounced, there is no recollection in your mind that you advised Mr. Johnson that he had forty-five days to appeal his decision to the Superior Court of Pennsylvania?

A. I felt certain that I did not so advise him, under the circumstances.

Q. You did not?

A. No.

(N.T. March 25, 1970 at 10–11).

 Furthermore, appellant testified at the PCHA hearing that he had been unhappy with the guilty verdict, that his counsel knew he was unhappy, and that he was not told that he could attack the verdict by filing an appeal. (N.T. February 26, 1970 at 53–54). In view of this and counsel's inconsistent and, therefore, unpersuasive testimony, we are forced to conclude that the Commonwealth failed to meet its burden of proving by the preponderance of the evidence that appellant knowingly and voluntarily waived his appeal rights. At the very most, the Commonwealth showed that the decision not to appeal was based on counsel's assessment that it was in appellant's best interest to accept the lenient probationary sentence without further attack on the verdict. "[C]ounsel can be faulted for allowing [the right to appeal] to be waived unless the *accused himself* effectively waived that right." *Commonwealth v. McKnight, supra*, 311 Pa.Superior Ct. at 465, 457 A.2d at 1275 (emphasis added).

In *Commonwealth v. McCandless*, 301 Pa.Super. 128, 447 A.2d 275 (1982), appellant alleged via a PCHA petition that counsel was ineffective for failing to prosecute an appeal from judgment of sentence. At the evidentiary hearing held on the petition, counsel testified that he filed a timely appeal but after discussion with appellant's parents, he decided to withdraw the appeal with the hope of a favorable parole decision. The hearing court found that counsel was not ineffective for discontinuing the appeal because his strategy had a reasonable basis designed to effectuate

appellant's interests. This court found that such a ruling was erroneous absent a finding that appellant had agreed to counsel's strategic decision to withdraw the appeal. Likewise, in the instant case, while counsel's decision to accept the lenient sentence without further attack on the conviction may be viewed as a reasonable strategy designed to effectuate appellant's best interests, without evidence that appellant himself agreed to this decision, we must find that "trial counsel's testimony, taken in the light most favorable to the Commonwealth, will not support a finding of acquiescence sufficient to constitute a waiver." *Commonwealth v. Peake,* 210 Pa.Super. 133, 231 A.2d 908 (1967). *See also, Commonwealth ex rel. Cunningham v. Maroney,* 421 Pa. 157, 218 A.2d 811 (1966); *Commonwealth v. Fareri,* 271 Pa.Super. 174, 412 A.2d 632 (1979).

■ Therefore, based on our independent review of the record, we are forced to conclude that trial counsel rendered ineffective assistance for failing to advise appellant of his right to file a direct appeal from judgment of sentence. In *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982), this court held that once a defendant has shown that he was denied his appellate rights, relief must be granted in the form of an appeal *nunc pro tunc.* Accordingly, we reverse the Order of the lower court and grant appellant an appeal *nunc pro tunc* from the judgment of sentence imposed on January 16, 1964.

■ Having so ruled, we are persuaded by the decision in *Commonwealth v. McKnight, supra,* to consider this present appeal as the appeal *nunc pro tunc* which we have just granted. In *McKnight,* the PCHA hearing court found that appellant had knowingly and voluntarily waived his appellate rights and, therefore, denied his PCHA petition. On appeal, this court reversed that finding and granted appellant an appeal *nunc pro tunc.* The remaining claims raised in the appeal had been presented to the lower court and an evidentiary hearing had been held. Thus claims were fully briefed on appeal. Therefore, rather than relinquishing jurisdiction to allow the appellant to file an appeal

*nunc pro tunc,* the court found that the better course was to resolve the remaining claims in the context of a *nunc pro tunc* appeal:

> The resolution of appellant's claims in the posture of a *nunc pro tunc* appeal serves the dual purpose of quickly remedying the denial of a direct appeal and at the same time promoting the traditional policies of judicial economy and fairness.

*Id.* 311 Pa.Super. at 466 n. 8, 457 A.2d at 1276 n. 8.

In the present case, the remaining allegations contained in appellant's PCHA petition raise claims of error committed at trial. All of these issues have been fully briefed by the parties. We will, therefore, address the issues in the context of the appeal *nunc pro tunc* from judgment of sentence.

Appellant claims, *inter alia,* that the introduction of a tacit admission against him violated his privilege against self-incrimination. In *Commonwealth v. Vallone,* 347 Pa. 419, 32 A.2d 889 (1943), the Pennsylvania Supreme Court defined the tacit admission rule as follows:

> The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a denial but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made.

*Id.,* 347 Pa. at 421, 32 A.2d at 890. The use of tacit admissions was proscribed in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968), appellant had been granted an appeal *nunc pro tunc* following a finding at a post-conviction proceeding that he had been denied his appellate rights following a 1964 conviction. On the appeal *nunc pro tunc,* he argued that the introduction of a tacit admission against him was error. The Commonwealth argued that inasmuch as appellant was tried prior to

the date of the decision in *Miranda, supra,* its holding proscribing the use of tacit admissions was inapplicable. In an attempt to buttress this argument, the Commonwealth relied on *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, 223 A.2d 296 (1966), which held that *Miranda's* proscription of the use of tacit admissions would not be applied retroactively.

The supreme court, however, rejected this argument finding that *Shadd* held only that a tacit admission could not be collaterally attacked. The *nunc pro tunc* appeal before the court, however, was a direct appeal from judgment of sentence. Thus, the decision in *Commonwealth v. Dravecz,* 424 Pa. 582, 227 A.2d 904 (1967), that a reversal is required in all cases employing a tacit admission wherein the judgment was not finalized as of the date of *Miranda* was announced, was found to be applicable under the principle that a judgment is not final until the availability of appeal is exhausted, citing *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). *Little, supra,* 432 Pa. at 259, 248 A.2d at 34. *See also, Commonwealth v. Lee,* 470 Pa. 401, 368 A.2d 690 (1977). Accordingly, the *Little* court reversed based on the use of a tacit admission and remanded for a new trial.

[7, 8] *Little* controls the instant case. During the course of appellant's trial, the following testimony was elicited by the prosecutor from Officer Israel Span on the subject of the victim's identification of appellant in a lineup:

Q. We'll go back to the time he was identified in the lineup. After he was identified as one of the persons then, did the defendant make any statement or answer to that accusation?

A. No— ...

Q. My question is, at the time he was identified did defendant make any statement or response?

A. The Defendant Johnson at this time said he didn't wish to say anything at this time.

Q. That was his answer?

A. That was his answer.

N.T. December 4, 1963, at 40. The prosecutor's ability to use appellant's silence in this way was important to its case because appellant was not the individual whom the victim initially identified at the lineup; rather, he identified a detective as his assailant and only on a second look identified appellant. Clearly, the tacit admission was used for the purpose of implying that appellant's failure to deny the identification was an admission.

Under the holding of *Miranda, supra, Dravecz, supra,* and *Little, supra,* the introduction of appellant's silence was improper. Accordingly, *Little's* holding that on an appeal *nunc pro tunc* a defendant may raise the question of the use of a tacit admission, controls our disposition of this case. We are not persuaded by the Commonwealth's argument that the admission was not prejudicial to appellant. As we have already observed, the victim, a man of advanced age with admittedly poor vision who told police that he was not able to see the assailant's face during the incident, made a misidentification at the first lineup. The use of appellant's silence as an implied admission was certainly used to bolster the reliability of the subsequent identification of appellant. Nor can we find any other such overwhelming evidence of guilt as to find this error harmless. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

We are, therefore, albeit with great reluctance, compelled to reverse the judgment of sentence and remand for a new trial.[1]

WICKERSHAM, J., files dissenting statement.

WICKERSHAM, Judge, dissenting:

I would AFFIRM.[1] Appellant has clearly enjoyed "his day in court."

---

1. Inasmuch as we find that the use of the tacit admission controls our disposition, we need not address the remainder of appellant's claims.

1. The underlying facts are fairly set forth in appellee's brief as follows:
 On May 4, 1961, at approximately 2:20 p.m., the messenger for Rowell Department Store, Lucien Hart, was robbed by two men

while he was on his way to a bank to deliver the store's receipts for the day, totalling $15,000 in cash and checks. Defendant was arrested on May 26, 1961, as a result of his participation in the robbery, and charged with aggravated robbery and criminal conspiracy as of Indictment Nos. 532 and 533, June Session, 1961, of the Court of Common Pleas, Criminal Trial Division, Philadelphia County. On May 29, 1962, after trial before the Honorable Harold D. Saylor and a jury, defendant was convicted of all charges. Post-verdict motions were filed, and on May 2, 1963, Judge Saylor granted defendant's motion for a new trial. Represented by new counsel, David Savitt, Esquire, now Judge of the Court of Common Pleas of Philadelphia County, defendant was retried on December 4, 1963, before the Honorable Victor Blanc, sitting without a jury, and he was again convicted. On January 16, 1964, a period of probation of three years was imposed on the robbery conviction. Defendant received a violation of probation hearing before the Honorable Thomas M. Reed on January 16, 1967. Judge Reed revoked the original probation and imposed a new period of probation of three years. Another probation violation hearing was held on April 25, 1969, and the second order of probation revoked. On May 26, 1969, pursuant to his order revoking probation, Judge Reed imposed a period of imprisonment of eight to twenty years on the conviction for robbery. No appeal was taken from the original judgment of sentence [nor] from the two subsequent judgments of sentence following the revocation hearings.

On November 19, 1969, more than eight years after his arrest and almost six years after he was sentenced, defendant filed a counselled petition for relief under the Post Conviction Hearing Act, 42 Pa.C.S.A. § 9541 *et seq.* An evidentiary hearing was held on February 26 and March 25, 1970, before the Honorable Ethan Allen Doty. Judge Doty denied the petition on June 10, 1970. This Court denied defendant's application for allowance of appeal *nunc pro tunc* from the denial of his P.C.H.A. petition in a *per curiam* order dated July 27, 1970. The Pennsylvania Supreme Court denied defendant's petition for allowance of appeal on November 18, 1970.

A second counselled P.C.H.A. petition was filed in the Court of Common Pleas of Philadelphia [County] on April 16, 1971. This petition raised only one claim, alleging that the sentence imposed after the second revocation of probation violated defendant's right against being placed twice in jeopardy. Judge Reed denied this petition without a hearing on May 6, 1971. This order was appealed to this Court, which affirmed in an opinion authored by Judge Hoffman. *Commonwealth v. Johnson*, 222 Pa.Super. 233, [294 A.2d 778] (1972). Defendant filed a petition for writ of habeas corpus in the United States District Court on May 16, 1971. Relief was denied in an order issued by the Honorable Clarence C. Newcomer, dated January 11, 1974.

On January 28, 1977, defendant filed his third P.C.H.A. petition without the aid of counsel. The Honorable Edward J. Blake denied this petition without a hearing on February 9, 1978 finding that all claims raised in the petition had been either finally litigated or waived. Counsel was appointed for purposes of appeal and defendant appealed to this Court requesting a grant of leave to appeal *nunc*

*pro tunc* from Judge Doty's June 10, 1970 order denying defendant's first petition for post-conviction relief. On April 23, 1982, this Court reversed the lower court's decision and remanded the case for an evidentary hearing to determine the grounds for defendant's failure to appeal the denial of his first P.C.H.A. petition. *Commonwealth v. Johnson*, [298] Pa.Super. [493], 444 A.2d 1291 (1982). At a remand hearing on August 4, 1982, the Commonwealth conceded that an appeal should be granted *nunc pro tunc* from the first P.C.H.A. denial and Judge Blake granted defendant allowance of appeal. Thus, in this appeal, defendant is limited to those issues he raised in his first P.C.H.A. petition.

I. DEFENDANT WAIVED ALL OF HIS CLAIMS BY WAITING MORE THAN SIX YEARS TO RAISE THEM.

Based on his first P.C.H.A. petition, defendant raises five claims on the basis of which he requests the grant of a new trial:

1) that evidence of a tainted pretrial identification was introduced against him at trial;

2) that evidence of two 'tacit admissions' were introduced at trial;

3) that he was tried by an incompetent judge;

4) that the waiver of his right to a jury was not knowing and intelligent; and

5) that he was twice placed in jeopardy for the same offense.

Defendant's first P.C.H.A. petition was the first time he raised any of these claims; he filed no direct appeal at any time after his conviction.

Defendant's present claims of trial error are obviously frivolous. More than six years before he filed his first P.C.H.A. petition, defendant was tried and convicted of the charges against him. Almost five years later, after defendant had violated probation for the second time by committing burglary, defendant was sentenced to eight to twenty years imprisonment. Defendant's only reason for now complaining about the way in which he was tried and sentenced is that, because of his continued misconduct, he had been made to answer for the criminal acts he committed in 1961. Brief for Appellee at 1–5 (footnotes omitted).